## Redford v. Crowe's Administratrix.

(Decided March 2, 1928.)

(Opinion Rewritten and Rehearing Denied June 27, 1928.)

### Appeal from Union Circuit Court.

1. Limitation of Actions.—Under Ky. Stats., secs. 4665, 4666, relating to right of surety to an assignment on payment of principal debt, surety's cause of action against principal on note after payment thereof by surety held within 15-year limitation of section 2514, as being on transferred note and not on implied common-law obligation of principal, which cause of action would be barred in five years after it accrued.

2. Limitation of Actions.—Answer to action on note by surety against principal after payment thereof by surety relying on bar of limitations held demurrable for failure to state facts showing that cause of action was barred.

KATHLEEN MULLIGAN for appellant.

G. L. DRURY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On July 1, 1917, John M. Crowe, as principal and the appellant and plaintiff below, A. Lee Redford, as his surety, executed to the Morganfield National Bank of Morganfield, Ky., their note whereby they promised to pay it $250, 120 days thereafter. The principal did not pay it, but plaintiff did, and the bank thereupon indorsed it, "Paid by A. Lee Redford and now assigned to him

without recourse," and delivered it to him. Crowe, the principal in the note, died in June, 1924, intestate, and the appellee and defendant below, Mary E. Crowe, his widow, qualified as his administratrix. Plaintiff made proof of his claim as owner of the note under the transfer made to him by the bank, and demanded payment of defendant, but it was refused, and in March, 1926, he filed this action against her in the Union circuit court to recover judgment for the amount of the note and interest. One of the paragraphs of the answer was an effort to rely on the statute of limitations, to which a demurrer was filed, which the court overruled. Plaintiff declined to plead further, and his action was dismissed. Complaining of that judgment, he has filed a copy of the record in this court with a motion for an appeal. The record presents two questions for determination: (1) What is the applicable limitation to plaintiff's cause of action; and (2) whether the limitation defense contained in the answer is sufficient in form or substance to meet the requirements of the correct rule of practice. We will consider and determine those questions in the order named.

1. Counsel for plaintiff argues in this court that his cause of action was upon the *note* as holder thereof, by assignment, and that the limitation of 15 years applies to his cause of action thereon as is prescribed by section 2514 of our present statute, while defendant's counsel argues that the only cause of action that plaintiff had against defendant's decedent, the principal in the note, was the common-law implied obligation on the part of the latter to reimburse plaintiff the amount paid by him when he took up the note and which cause of action was, of course, not in writing and was barred five years after it accrued. In other words, he insists that the payment of the note by plaintiff operated to extinguish it, and its vitality was not preserved by its attempted transfer to him.

Section 4665 of our Statutes provides, in substance, that if a surety pays the whole or a part of a debt for which he is so liable he may recover the amount paid by him with interest from that time, not only from the principal in the note, but also from his co-surety, his pro rata part, who under our statute is released after seven years from the accrual of the cause of action against him, although the principal may be sued at any time within 15 years after such accrual. The following section

(4666) provides that upon the payment of a judgment by a surety he has the right to an assignment of it to him, with all of the provided remedies for its collection allowed by law, among which are the issuing of an execution at any time before the expiration of 15 years, and the reviving of it for another 15 years after the issual of such execution. These statutes, to our mind, evince an intention and purpose on the part of the Legislature to at least acknowledge the right in the surety to an assignment of the evidence of his obligation upon its payment by him, and it was, in effect, so held in the cases of Joyce v. Joyce, 1 Bush, 474, and Stratton v. Heuser, 19 Ky. Law Rep. 1019, 42 S. W. 1133.

If, however, it should be contended that those cases do not apply because they arose before the enactment of our present "Negotiable Instruments Act" (now section 3720b of our present statutes, and its various subsections), the answer is that in the cases of Sisk v. Sisk, 192 Ky. 672, 234 S. W. 296, the right of plaintiff to recover against the estate of his principal on a note for $310 that plaintiff as surety had paid and taken a transfer of it to himself, was involved. Recovery was resisted upon the theory that the obligation of the principal to his surety who paid the note was only the implied one at common law for reimbursement, and that the five years' statute of limitation applied; but in overruling that contention we said:

> "Obviously the trial court did not err in adjudging appellee a recovery upon the $310 note executed by A. D. Sisk to Boyle and upon which W. H. Sisk was surety. This note was introduced in evidence and the assignment upon it from Boyle to W. H. Sisk shows it was paid by the latter. By the assignment he was subrogated to all rights as owner of the note that had been possessed by Boyle. The only defense interposed to this note by the answer was a plea of the statute of limitations, and as at least one payment was made by A. D. Sisk upon the note after its assignment to W. H. Sisk and this was within fifteen years after its maturity, such payment had the legal effect to postpone 15 years from its date the bar provided by the statute."

In the foreign cases of Durham v. McDowell (Tex. Civ. App.) 265 S. W. 425; Pease v. Syler, 78 Wash. 24, 138 P. 310; Pendergraft v. Phillips, 57 Okl. 105, 156 P.

1189; Mason v. Pierron, 63 Wis. 239, 23 N. W. 119; Ferd Heim Brewing Co. v. Jordan, 110 Mo. App. 289, 85 S. W. 927; Nelson v. Webster, 72 Neb. 332, 100 N. W. 411, 68 L. R. A. 513, 117 Am. St. Rep. 799; Neal v. Nash, 23 Ohio Stat., 483, and Brown v. White, 29 N. J. Law, 307, 80 Am. Dec. 226, the court had before it the identical question now under consideration, and held that a surety in paying the note for his principal and in procuring an assignment of it to himself obtained all of the rights and remedies in and to it to which the original payee was entitled. In other words, the Sisk case and the foreign courts in the cases last referred to held that the surety, upon paying the note and having it transferred to him by the payee, became the owner of it, and as such could sue the principal on it to recover whatever amount the latter had not paid in extinguishment of it, and that the surety under such circumstances was not confined to his common-law right of reimbursement upon the implied obligation on the part of the principal to do so.

A majority of those opinions were rendered after the enactment within the particular jurisdictions of "Negotiable Instruments Acts" substantially if not entirely similar to ours. A discussion of the question will be found in the notes to the publication of the opinion in the case of Nelson v. Webster, in the L. R. A. and Am.. St. Rep. volumes, supra. A reading thereof will show that, because of the peculiar phraseology of the Negotiable Instruments Act under consideration, or because of some line of reasoning adopted by the particular court, a small minority of them deny the right of the surety on paying the obligation to a transfer of it to himself so as to preserve all of the rights and remedies flowing therefrom; but we are not inclined to accept their reasons for so doing. On the contrary, we can see no legal or logical impediment in the way of such a transfer of the obligation to the surety when paid by him. It will be conceded that if a stranger to the writing containing the obligation should pay it a transfer of it to him would vest him with all of the rights therein that were possessed by the original transferring obligee; and we have been cited to no convincing reasons, nor have we met with any after somewhat of a painstaking investigation made in this case, for denying the same right to a paying surety.

But it is insisted that plaintiff, the surety herein, was one of the principal debtors in the note, and that by subdivision 1 of section 3720b-119 (a part of our Negotia-

ble Instruments Act) the note here involved was *discharged* when plaintiff paid it, and that under the provisions of section 3720b-191, a part of the same act, plaintiff was primarily liable on the note. The first subsection provides that such obligations are discharged ''by payment in due course by or on behalf of the principal debtor,'' and the second one says:

> ''The person 'primarily' liable on an instrument is the person who, by the terms of the instrument, is absolutely required to pay the same. All other parties are 'secondarily' liable.''

Mr. Brannan in the last edition (1926) of his Negotiable Instruments Law, by Zechariah Chafee, Jr., on page 725, in discussing the sections of the Negotiable Instruments Act, hereinbefore referred to, upon the question now before us, says:

> ''The confusion is much increased by the absence of any definition in the act of the words 'principal debtor' which are used both in section 119 and 120. These words may mean either a party primarily liable or a party who, as between himself and other party or parties to the instrument, ought to pay it.''

Some courts adopt the first interpretation of the words ''primarily liable'' therein referred to, while others adopt the second one. But we do not feel called upon in this case to adopt either of them, since we held in the Sisk case, supra, which was in line with the public policy expressed in sections 4665 and 4666 of our Statutes, supra, that a payment by a surety, while it would operate to discharge both himself and his principal from further obligation on the note to the *obligee* therein, would not necessarily discharge their obligations thereon inter se. We therefore conclude that plaintiff's cause of action was on the transferred note to him and not on the implied common-law obligation of his principal.

In the cases of Southern National Bank v. Schimpler, 160 Ky. 813, 170 S. W. 178; Coleman v. Coleman, 189 Ky. 96, 224 S. W. 668; Paintsville National Bank v. Robinson, 220 Ky. 418, 295 S. W. 412, and the Sisk case, supra, we expressly held that a transfer of a note, otherwise negotiable, by the payee therein *after* it matured did not place it ''upon the footing of a bill of exchange'' so as to bar a right of action thereon after five years, as

is provided by section 2515 of our statutes. A reading of the opinions in those cases will be sufficiently convincing of their soundness, and the conclusion so announced in them is in accord with the adjudged law everywhere under the same or similar facts. For a negotiable instrument to be put "upon the footing of a bill of exchange" it must be negotiated before it becomes due, otherwise the holder to whom it may be transferred after maturity is not one "in due course," and which is necessary for the instrument to be put "upon the footing of a bill of exchange" so as to come within the five-year limitations provided for by section 2515 of our statutes.

We therefore conclude that if the note was transferred by the bank in this case to plaintiff after it became due the applicable limitations to his cause of action thereon against his principal was and is 15 years from the date of its maturity, but whether the assignment to plaintiff if made before the note matured would be such a negotiation thereof as to entitle him (because he was a joint obligor) to all the rights of a holder in due course and to place the note in his hands "upon the footing of a bill of exchange" so as to become barred by the five-year limitation provided in section 2515 applicable thereto, as would no doubt be true if he was a stranger to the note, we deem it unnecessary to determine. But we do hold that the cause of action herein is upon the note itself and not upon the implied obligations of the principal for reimbursement, and that the prescribed limitation in bar of the latter cause of action is not the applicable one here.

2. The paragraph of the answer relying upon the bar of limitations states that the note "was and is a negotiable instrument and was negotiated by the Morganfield National Bank to A. Lee Redford, the plaintiff, and is therefore barred by the statute of limitation of the state of Kentucky in such cases made and provided and which statute the defendant especially pleads and relies upon." We are convinced that it was insufficient and the demurrer thereto should have been sustained. The text in 37 C. J. 1219, sec. 726, in stating the correct rule of pleading such defense, says:

"The statute of limitations ordinarily must be pleaded by stating the facts which show that the cause of action is barred by the statute, or, in some jurisdictions, it may be pleaded by specifying the particular section or subdivision of the statute

under which it is claimed the action is barred. However, ordinarily no particular form of plea is required, and although the pleading of the statute should be explicit and special, so that the party against whom it is opposed may be put on his guard, and should aver that the time prescribed as a bar by statute has elapsed, the words of the statute need not be followed; and it is generally held sufficient to make a plain statement of such facts as are necessary to apprise plaintiff of the fact that defendant relies on the statute and to show that the statute is applicable to the alleged cause of action.''

In note 19 to that text cases are stated in support of it from the highest and inferior courts of the United States and from the highest courts of 19 states of the Union, including Kentucky, and our investigation convinces us that the rule as so announced is in complete accord with fundamental principles of correct and proper pleading, chief among which is to inform the adverse litigant of the facts relied on to defeat his claim or his defense. But if we were not so convinced we would still be bound to follow our prior rulings on the same question. The domestic cases supporting the rule, as announced in the text, supra, are Clark v. Schwing, 1 Dana, 333; Mitchell v. Dunevant, 9 Ky. Op. 362; Woodward v. Ender's Ex'r, 5 Ky. Law Rep. 320; Id., 12 Ky. Op 427; and Rosson v. Metcalfe, 19 Ky. Law Rep. 1800, 44 S. W. 423. We have carefully read the opinions in each of those cases, and find that they are in full accord with the above excerpt from Corpus Juris.

The defense in the Mitchell case was couched in this language:

"He says that said Mitchell did distill whisky in the year 1866, but that the plaintiff had no partnership with the said Mitchell in that year in said business, and he pleads and relies on the statute of limitations, against any matters set up in plaintiff's petition and account, whereby he seeks to charge said Mitchell's estate with any indebtedness to him, plaintiff, and he says that the account of plaintiff is postdated intentionally.''

The court, in denying its sufficiency, said:

"A plea of the statute of limitations, like every other defense, to be good, must contain a statement

of the facts relied upon in order to enable the court to say whether it constitutes a defense, as well as to enable the adverse party to know how to prepare to meet it. It should state the period of time relied upon, and show that that time had elapsed between the period when the statute began to run and that when it was arrested by the suit in which the plea is filed. To say the defendant pleads and relies on the statute of limitations, and no more, is as insufficient as to say he pleads and relies on payment, without averring that he has paid the debt sued for, or that he pleads and relies on infancy without averring the fact of infancy.''

In the Woodward case the pleader employed practically the same language, and in holding it defective and insufficient the court through Judge Lewis said:

''It has heretofore been held by this court that an answer merely that the party relies on the statute of limitations is clearly defective, it being necessary to plead the facts necessary to sustain the plea. This was not done in the answer of appellant. But without setting forth any facts whatever upon which to base the plea of limitations or to enable the court to determine from the pleadings whether a statutory bar does or does not exist, appellant answered in general terms that she pleaded and relied upon the statute of limitations. Therefore, adhering to the rule heretofore adopted, the answer in that respect must be regarded as defective.''

The other domestic opinions are in accord with those from which we have inserted excerpts, and the rule therein announced should not be departed from. The defense in this case mentioned no statute or period of limitation upon which defendant relied; nor did it aver the time when plaintiff's cause of action accrued, according to defendant's theory of the case; nor did it aver what defendant considered as plaintiff's cause of action. Without mentioning any statute, any cause of action or the time when it accrued, the pleading only expressed the pleader's conclusion that the action was barred, and which, as we have seen, made the pleading defective, and for which reason alone the demurrer filed thereto should have been sustained.

Wherefore, the motion for an appeal is sustained, the appeal is granted, and the judgment is reversed, with

directions to sustain the motion for a new trial and to set aside the judgment, and for further proceedings consistent with this opinion.